UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DELORES A., | ) | Case No.  ED CV 17-254-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On February 13, 2017, plaintiff Delores A. filed a complaint against

defendant, the Commissioner of the Social Security Administration

("Commissioner"), seeking a review of a denial of a period of disability, disability

insurance benefits ("DIB"), and supplemental security income ("SSI").  The parties

have fully briefed the matters in dispute, and the court deems the matter suitable

for adjudication without oral argument.

Plaintiff presents four disputed issues for decision:  (1) whether the

Administrative Law Judge ("ALJ") properly considered the opinion of a treating physician; (2) whether the ALJ properly considered the credibility of plaintiff's testimony; (3) whether the ALJ presented a proper hypothetical to the vocational expert; and (4) whether remand is warranted based on new and material evidence. Joint Stipulation ("JS") at 3.

Having carefully studied the parties' Joint Stipulation, the Administrative Record ("AR"), and the decision of the ALJ, the court first concludes that, as detailed herein, the ALJ properly applied the presumption of continuing non-disability under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). The court also concludes the ALJ properly considered the opinion of the treating physician, properly considered plaintiff's credibility, presented a proper hypothetical, and the new evidence did not warrant remand. Additionally, the court finds plaintiff forfeited her belatedly raised Appointments Clause challenge. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-six years old on the alleged disability onset date, is a high school graduate. AR at 47, 126. Plaintiff has past relevant work as a fast food cook, retail cashier, caretaker, order clerk, fast food manager trainee, fast food worker, food service worker, and telephone operator. *Id*. at 35-36, 62-64, 67-69.

On March 11, 2010, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of October 30, 2009. *Id.* at 106, 127. The ALJ determined plaintiff had the residual functional capacity ("RFC")[1] to perform

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151

medium work, but limited to standing and/or walking for six hours out of an eight-hour workday, sitting for six hours out of an eight-hour workday, and simple, repetitive tasks. *Id*. at 111. The ALJ concluded plaintiff was able to perform her past relevant work as a fast food worker with such an RFC. *Id*. at 116. Consequently, the ALJ denied plaintiff's claims on June 10, 2011. *Id*. at 117, 127.

On February 28, 2013, plaintiff filed her second set of applications for a period of disability, DIB, and SSI due to bipolar disease, depression, schizophrenia, anxiety, gastritis, thyroid problems, and insomnia. *Id*. at 126, 140. The applications were denied initially and upon reconsideration, after which plaintiff filed a request for hearing. *Id*. at 186-90, 195-202.

On April 17, 2015, the same ALJ who denied plaintiff's first applications held a hearing regarding her second applications. *Id*. at 42-73. Plaintiff, represented by a non-legal advocate, appeared and testified at the hearing. *Id*. The ALJ also heard testimony from Corinne Porter, a vocational expert. *See id*. at 62-64, 67-72. On July 8, 2015, the ALJ denied plaintiff's claims for benefits. *Id*. at 26-36.

As an initial matter, the ALJ found there was no new and material evidence that constituted a showing of a changed circumstance material to the determination of disability. *Id*. at 26. The doctrine of res judicata therefore dictated that the ALJ find the presumption of continued non-disability had not been rebutted. *Id*.

Then applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since June 11, 2011, the alleged onset date. *Id.* at 29.

At step two, the ALJ found plaintiff suffered from two severe impairments: history of umbilical hernia repair surgery and depressive disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or

n.2 (9th Cir. 2007).

in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC, and determined plaintiff had the RFC to perform medium work, with the limitations that plaintiff could: stand and walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; only perform unskilled work and simple, repetitive tasks. *Id.* at 31.

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as a fast food worker and order clerk. *Id*. at 35. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id*. at 36.

Plaintiff filed a timely request for review of the ALJ's decision and submitted an additional opinion, but the Appeals Council denied the request for review. *Id.* at 5-7. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

1  "relevant evidence which a reasonable person might accept as adequate to support
2  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
3  F.3d at 459. To determine whether substantial evidence supports the ALJ's
4  finding, the reviewing court must review the administrative record as a whole,
5  "weighing both the evidence that supports and the evidence that detracts from the
6  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be
7  affirmed simply by isolating a specific quantum of supporting evidence.'"
8  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
9  Cir. 1998)). If the evidence can reasonably support either affirming or reversing
10 the ALJ's decision, the reviewing court "'may not substitute its judgment for that
11 of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
12 1992)).

**IV.**

**DISCUSSION**

**A.**    **The ALJ Properly Applied the Presumption of Non-Disability**

16         Without specifically raising it as a separate issue, plaintiff argues the ALJ
17 improperly applied the presumption of continuing non-disability under *Chavez*. JS
18 at 9-10. Plaintiff contends she presented new and material evidence that
19 establishes an increase in the severity of her impairments and thus changed
20 circumstances. *Id.* Defendant does not address the application of *Chavez*.

21         "The principles of res judicata apply to administrative decisions, although
22 the doctrine is applied less rigidly to administrative proceedings than to judicial
23 proceedings." *Chavez*, 844 F.2d at 693 (citation omitted). Administrative res
24 judicata applies if the Commissioner has "made a previous determination or
25 decision . . . about [a claimant's] rights on the same facts and on the same issue or
26 issues, and this previous determination or decision has become final by either

5

administrative or judicial action." 20 C.F.R. § 416.1457(c)(1).[2]

A previous final determination of non-disability creates a presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996) (as amended); *see also Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985); *Lyle v. Sec'y of Health and Human Servs.*, 700 F.2d 566, 568-69 (9th Cir. 1983); Social Security Acquiescence Ruling ("SSAR") 97-4(9). "[I]n order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, [the claimant] must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). In other words, the presumption of non-disability does not apply if, for example, the claimant proves "a change in the claimant's age category . . . , an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability." Social Security Ruling ("SSR") 97-4(9).

Here, the ALJ found that plaintiff failed to demonstrate a changed circumstance since the date of the previous unfavorable decision and therefore did not rebut the presumption of continuing non-disability. *Id.* at 26; *see Chavez*, 844 F.2d at 693. As plaintiff acknowledges, in this case, the sole basis to rebut the presumption would be an increase in the severity of her impairments. JS at 9. To that end, plaintiff submitted the opinion of treating physician Dr. Steve Eklund as evidence of an increase in the severity of her impairments. *See JS* at 9-10. Subsequent to the ALJ's denial, plaintiff submitted an opinion from an examining physician, Dr. Gene Berg, to the Appeals Council. *See AR* at 8, 701-10; JS at 28-

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

6

31.  As discussed below, the ALJ did not err in rejecting Dr. Eklund's opinion, and Dr. Berg's opinion does not constitute new material evidence.  Further, even if res judicata did not apply, the ALJ properly denied plaintiff's claims for the reasons that follow.

**B.**     **The ALJ Properly Considered Dr. Eklund's Opinion**

Plaintiff argues the ALJ failed to properly consider the opinion of his treating psychiatrist, Dr. Steve Eklund.  JS at 4-11.  Specifically, plaintiff contends the ALJ did not expressly state what weight he accorded Dr. Eklund's opinion, his reasons for discounting the opinion were not supported by substantial evidence, and Dr. Eklund's opinion was new and material evidence that precluded reliance on *Chavez*.  *Id*.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. §§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.926(c), (e); *Lester*, 81 F.3d at 830.  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416. 927(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. **Dr. Steve Eklund**

Dr. Steve Eklund, a psychiatrist, treated plaintiff from March 30, 2012 through at least January 2015. AR at 481, 674. During the treatment sessions, plaintiff would complain of, among other things, depression, paranoia, hallucinations, and irritability. *See, e.g., id.* at 508, 511, 515, 676. Dr. Eklund diagnosed plaintiff with schizoaffective disorder, bipolar type. *Id.* at 481.

On October 22, 2013, Dr. Eklund completed a Psychiatric/Psychological Impairment Questionnaire. *Id.* at 481-88. Dr. Eklund identified clinical findings to support his diagnosis and stated that the findings were obtained from plaintiff's history. *Id.* at 482. Dr. Eklund opined plaintiff was markedly limited in almost all categories. *See id.* at 484-86.

### 2. **State Agency Physicians**

The State Agency physicians reviewed Dr. Eklund's records through May 2013. *See id.* at 132. The State Agency physicians noted that plaintiff has received mental health treatment since 2010 and her treatment notes indicated that she has presented with an irritable mood and complained of seeing spiders and paranoia. *Id.* at 132-34, 147, 163, 177. But the State Agency physicians also noted that the

objective examinations were unremarkable, plaintiff has been on the same medications, and has not been hospitalized. *Id.* Based on plaintiff's medical records, the State Agency physicians opined that there was no new and material evidence to rebut the previous determination. *Id.*

The State Agency physicians also conducted a mental RFC assessment. *See id.* at 136-37, 150-51, 166-67, 180-81. The State Agency physicians concluded that plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods, but otherwise not significantly limited. *See id.* The State Agency physicians opined that given these limitations, plaintiff was capable of unskilled work. *See id.*

### 3. The ALJ's Findings

In reaching his RFC determination, the ALJ gave significant weight to the opinions of the State Agency physicians. *Id.* at 34. The ALJ stated that he considered Dr. Eklund's opinion, but did not expressly state what weight he gave the opinion. *See id.* Instead, the ALJ provided the following reasons for discounting Dr. Eklund's opinion: (1) his opinion appears to have been given as an accommodation to plaintiff; (2) the opined limitations are in checklist form without explanations; (3) his opinion was inconsistent with the minimal positive findings; (4) his opinion was inconsistent with plaintiff's conservative treatment; and (5) he relied heavily on plaintiff's subjective complaints, which were unreliable. *Id.*

The ALJ properly considered Dr. Eklund's opinion. Although the ALJ did not expressly state how much weight he gave Dr. Eklund's opinion, the ALJ's failure to make an express pronouncement does not require remand since it is clear from the decision that the ALJ considered and gave little weight to Dr. Eklund's opinion. *See Magallanes*, 881 F.2d at 755 (an ALJ need not recite "magic words," a reviewing court may draw inferences from an opinion). Indeed, the ALJ

discussed Dr. Eklund's treatment notes and opinion and provided multiple reasons for discounting the opinion, some of which were specific and legitimate and supported by substantial evidence. *See* AR at 33-34.

First, the ALJ concluded that Dr. Eklund likely completed the questionnaire as an accommodation to plaintiff, thereby calling into question its neutrality and reliability. *See id*. at 34. An ALJ may not reject a physician's opinion on the assumption that he is acting as an advocate for his patients. *See Lester*, 81 F.3d at 832 ("The [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability."). Here, there was no evidence of improprieties or that Dr. Eklund was acting as an advocate for plaintiff.

The ALJ's second reason for discounting Dr. Eklund's opinion was because it was in a checklist-style form that did not include any rationale for its conclusions. *See* AR at 34. An "ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to supports [its] conclusions." *Magallanes*, 881 F.2d at 751 (internal quotation marks and citations omitted); *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996) (evidence of an impairment in the form of "check-off reports" may be rejected for lack of explanation of the bases for their conclusions). Although Dr. Eklund's opinion was primarily in checklist form, the form allowed for some explanation. *See* AR at 481-88. Dr. Eklund identified clinical findings and plaintiff's symptoms that supported his diagnosis, as well as explained that he relied on plaintiff's history. *See id*. at 482-83. Even so, while Dr. Eklund's opinion was not wholly conclusory, as discussed below the rationale provided was insufficient. Dr. Eklund's explanations were unsupported by objective evidence, inconsistent with his treatment notes, and relied on plaintiff's discounted statements.

The ALJ's third reason for discounting Dr. Eklund's opinion – inconsistency

with minimal positive findings – was supported by substantial evidence. AR at 34; *see Tonapetyan*, 242 F.3d at 1149 (rejecting physician's opinion, in part, due to a lack of objective evidence to support it). Dr. Eklund identified numerous clinical findings in support of his opinion, but a significant number of those purported clinical findings were nowhere in his treatment notes and some were contradictory to his notes. As the ALJ noted, the treatment notes reflected minimal clinical findings. Dr. Eklund did not perform any diagnostic tests or mental status examinations. Instead, the treatment notes primarily reflected plaintiff's subjective complaints and few observations.

Dr. Eklund observed plaintiff was tearful, depressed, moody, and paranoid on some occasions, but was typically alert and oriented, cooperative, and had normal speech. *See, e.g.,* AR at 508-525, 674. The treatment notes did not reflect any observation that plaintiff, among other things, was abusing substances, felt guilt, was manic, or had psychomotor agitation. Indeed, Dr. Eklund's citation of suicidal tendencies as a clinical finding in his opinion was wholly inconsistent with his treatment notes in which he repeatedly documented plaintiff did not have suicidal ideation. *See id*. at 34, 482, 508-09, 511, 514, 520, 674-75. On some treatment notes, Dr. Eklund also noted that plaintiff had audio/visual hallucinations, but those notes appeared simply to reflect plaintiff's own comments rather than Dr. Eklund's observations during treatment. *See, e.g., id*. at 34, 520-23, 676. Moreover, the clinical findings in the treatment notes of plaintiff's other treating physicians were inconsistent with Dr. Eklund's minimal findings and opinion. Other physicians noted that plaintiff did not exhibit mood changes, anxiety, or feelings of helplessness, and, to the contrary, demonstrated normal behavior. *See, e.g., id*. at 542, 547, 643, 654. The clinical findings therefore reasonably did not support the marked limitations opined by Dr. Eklund.

The ALJ's fourth reason for discounting Dr. Eklund's opinion – the marked

limitations were inconsistent with the conservative treatment she received – was not specific and legitimate. *See id.* at 34; *cf. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (stating the ALJ properly rejected the opinion of a treating physician who prescribed conservative treatment because it was inconsistent with his opinion that the claimant was totally disabled). The record shows that plaintiff attended psychiatric sessions approximately monthly with Dr. Eklund and was treated with psychotropic medications. *See, e.g.,* AR at 508-12, 535-37. This type of mental health treatment is generally not viewed as conservative. *See, e.g., Carden v. Colvin*, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (the prescription of medications such as Zoloft and Seroquel is generally recognized as not conservative); *Mason v. Colvin*, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (treatment with anti-depressants and anti-psychotic medications was not conservative); *Odisian v. Colvin*, 2013 WL 5272996, at *8 (C.D. Cal. Sept. 8, 2013) (treatment with psychotropic medications and sessions with a psychologist was not conservative). Even so, regardless of how the treatment is characterized, plaintiff's treatment did not differ from her prior treatment. *See, e.g.,* AR at 94, 360-71.

Finally, the ALJ gave less or no weight to Dr. Eklund's opinion because it relied heavily plaintiff's subjective symptoms, but plaintiff was not credible. AR at 34; *see Morgan*, 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotation marks and citation omitted). As will be discussed below, the ALJ properly discounted plaintiff's credibility, and thus reliance on plaintiff's representations was a specific and legitimate reason to give Dr. Eklund's opinion less weight.

Accordingly, the ALJ provided some specific and legitimate reasons

supported by substantial evidence for discounting Dr. Eklund's opinion, namely
the opinion was unreliable because it was unsupported by objective evidence,
inconsistent with Dr. Eklund's treatment notes, and based on plaintiff's unreliable
subjective complaints.  Without Dr. Eklund's opinion, there was no basis for the
ALJ to find a changed circumstance to rebut the presumption of non-disability.

**C.      The ALJ Properly Discounted Plaintiff's Subjective Complaints**

Plaintiff contends the ALJ failed to properly evaluate her subjective
complaints.  JS at 14-16.  Specifically, plaintiff argues the ALJ's reasons for
finding her testimony less than credible were not clear and convincing and
supported by substantial evidence.  *Id*. at 16.

The ALJ must make specific credibility findings, supported by the record.
SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the
ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-
36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced
objective medical evidence of an underlying impairment "'which could reasonably
be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting
*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there
is no evidence of malingering, an "ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear and convincing
reasons for doing so."  *Smolen*, 80 F.3d at 1281; *accord Benton v. Barnhart*, 331
F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in
weighing a claimant's credibility, including:  (1) ordinary techniques of credibility
evaluation such as a claimant's reputation for lying; (2) the failure to seek
treatment or follow a prescribed course of treatment; and (3) a claimant's daily
activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*,
947 F.2d at 346-47.

At the first step, the ALJ found plaintiff's medically determinable

impairments could *not* reasonably be expected to cause the symptoms alleged. AR at 32. At the second step, the ALJ provided three reasons for discounting plaintiff's credibility: (1) plaintiff's treatment history was inconsistent with the alleged severity of her symptoms; (2) some of plaintiff's activities of daily living demonstrated plaintiff was capable of working and inconsistent with the alleged symptoms; and (3) the objective medical evidence did not support the severity of her symptoms. *Id*. The ALJ also adopted the findings in his prior decision. *See id*. at 27.

The ALJ's first ground for discounting plaintiff's testimony was that her treatment was inconsistent with the alleged severity of her symptoms. *Id*.; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d at 1039-40 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility). As discussed above, plaintiff's mental health treatment generally would not be considered conservative. The treatment for plaintiff received for her physical health, however, was inconsistent with plaintiff's alleged symptoms.[3] Plaintiff testified and reported that it hurt to engage in any activity involving her knees including walking and sitting; she had pain in her shoulder, neck, and back if she sat more than ten minutes or stood "too long"; she got bad pain in her fingers while cooking; and she had stomach pain. *See* AR at 53-54, 301. But plaintiff's physicians simply treated her back pain with anti-inflammatories and recommended exercise and a healthy diet. *See, e.g., id*. at 570, 576. Thus, although plaintiff's mental health treatment was not conservative, the treatment plan for her physical health was conservative

---

[3] Although plaintiff only argues the ALJ erred with respect to her mental health, when discussing her credibility, this court will not limit its analysis to plaintiff's statements concerning her mental health. The credibility of plaintiff's testimony as a whole is at issue.

14

and inconsistent with her alleged symptoms.

Second, the ALJ found plaintiff was able to engage in activities of daily living – specifically, driving, reading, cooking, and shopping – that were transferable to the work environment and inconsistent with her alleged symptoms. *Id*. at 32. Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But where a claimant is able "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," that may be sufficient to discredit her. *Morgan*, 169 F.3d at 600. Here, there was no evidence plaintiff spent a substantial portion of her day driving, reading, cooking, and shopping. Nor were plaintiff's activities inconsistent with her alleged symptoms. Therefore, the ability to engage in these activities was not a sufficient reason to discount plaintiff's credibility. But as the ALJ noted in the prior decision, plaintiff reported extreme limitations in her activities of daily living, and such purported extreme limitations cannot be attributed to her medical condition given the weak medical evidence.

The third reason for the ALJ's adverse credibility determination was that plaintiff's allegations were not supported by the objective evidence. AR at 32; *see Rollins*, 261 F.3d at 857 (lack of corroborative objective medical evidence may be one factor in evaluating credibility). The medical evidence showed no objective changes to plaintiff's condition since her previous application and did not support a

more restrictive RFC. *See* AR at 32.

With regard to plaintiff's physical health, plaintiff's examination findings and diagnostic testing were generally normal. *See, e.g., id.* at 564-91. Plaintiff does not dispute that the objective findings regarding her physical health were the same as her previous application.

As for plaintiff's mental health, there were similarly no objective changes indicating an increase in severity. Indeed, plaintiff implicitly concedes that there were no *new* objective findings indicating an increase in severity. *See* JS at 9-10. Instead, plaintiff argues that the evidence of an increase in severity was Dr. Eklund's opinion. *See id*. But Dr. Eklund's opinion itself was not an objective finding. Instead, it was a subjective opinion purportedly based on objective findings. As discussed above, a large percentage of the clinical findings Dr. Eklund identified were not in the treatment notes or were contradictory. Moreover, of the clinical findings that can be found in the treatment notes – tearful, depressed, moody, and paranoid – there was no indication that these findings were more severe than those documented in the treatment notes for the prior period. *Compare id*. at 360-71 and 508-525, 674. Finally, the clinical findings in Dr. Eklund's treatment notes were inconsistent with those in her other treatment notes, which documented few to no findings of mental health symptoms. *Compare id*. at 308-25 and 542, 547, 551, 56, 564. Thus, there was substantial evidence that the objective findings did not show an increase in severity from the prior period, and in any event did not support the alleged severity of her symptoms.

Finally, the ALJ adopted his findings from the prior decision. In the prior decision, the ALJ found plaintiff less credible because her testimony was not supported by objective medical evidence, she committed a crime of moral turpitude, and her alleged extremely limited activities of daily living could not be attributed to her medical condition. *See Albidrez v. Astrue*, 504 F. Supp. 2d 814,

822 (C.D. Cal. 2007) (a conviction for a crime of moral turpitude is a proper basis for an adverse credibility). These findings are not in dispute.

In sum, the ALJ cited two clear and convincing reasons supported by substantial evidence to discount plaintiff's subjective complaints, and also properly relied on the previous findings.

**D.** **The ALJ Presented a Proper Hypothetical to the Vocational Expert**

Plaintiff contends that the ALJ presented an improper hypothetical to the vocational expert. JS at 22-23. The ALJ found plaintiff had moderate difficulties in concentration, persistence, and pace. AR at 30. Plaintiff argues that the ALJ's limitations to unskilled work and simple, repetitive tasks did not sufficiently incorporate plaintiff's moderate difficulties in concentration, persistence, and pace in his hypothetical. JS at 22-3; *see* AR at 70.

"'If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (internal quotation marks and citation omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (same and citing additional authority).

Two Ninth Circuit cases provide guidance. In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008), the Ninth Circuit held that an ALJ's limitation to simple, routine, repetitive work adequately captured the claimant's deficiencies in pace because a physician opined plaintiff had a slow pace, both in thinking and action, but was able to carry out simple tasks. In other words, an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. By contrast, in an

unpublished decision one year later, *Brink v. Comm'r*, 343 Fed. Appx. 211, 212 (9th Cir. 2009), the Ninth Circuit held that the phrase "simple, repetitive work" did not encompass plaintiff's difficulties with concentration, persistence or pace, noting that the ALJ there failed to equate the two. This was clear from the ALJ's hypotheticals in that case – he posed one referencing only the simple, repetitive work limitation and another incorporating the additional limitation of moderate to marked attention and concentration deficits. *Id.* The court found *Stubbs-Danielson* distinguishable, as in *Stubbs-Danielson* the medical testimony did not establish any limitation in concentration, persistence, or pace, whereas in *Brink* the ALJ accepted that the claimant had difficulties with concentration, persistence, or pace. *Id.*

This case is more similar to *Stubbs-Danielson*. Here, the State Agency physicians opined that plaintiff had moderate limitations in concentration, persistence, and pace, and, in translating these limitations, explained that plaintiff retained the ability to perform unskilled work. *See* AR at 136-37, 150-51, 166, 180. *See also Mitchell v. Colvin*, 642 Fed. Appx. 731, 732-33 (9th Cir. 2016) (where physician determined plaintiff could maintain concentration, persistence, and pace when restricted to simple tasks, ALJ adequately accounted for moderate limitations in concentration, persistence, and pace with an RFC that restricted plaintiff to simple, repetitive tasks). As such, the ALJ's hypothetical was consistent with the medical testimony and adequately captured plaintiff's restrictions related to concentration, persistence, and pace. The ALJ posed a complete hypothetical.

**E.** **Dr. Berg's Opinion Does Not Warrant Remand**

In support of her request for review by the Appeals Council, plaintiff submitted an opinion by Dr. Gene N. Berg, an examining psychologist, dated June 16, 2016. AR at 701-10. Plaintiff contends that Dr. Berg's opinion constitutes

new and material evidence warranting remand of the case.

If a claimant submits new and material evidence to the Appeals Council, the Appeals Council "shall consider the additional evidence only where it relates to the period on or before the date of the hearing decision." 20 C.F.R. §§ 404.970(b), 416.1570(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r*, 682 F.3d 1157, 1163 (9th Cir. 2012). "Under 42 U.S.C. § 405(g), remand is warranted only if there is new evidence that is material and good cause for the late submission of the evidence." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001); *accord Booz v. Sec'y*, 734 F.2d 1378, 1380 (9th Cir. 1984). Evidence is material if it bears directly and substantially on the matter in dispute and there is a reasonable probability it would have changed the outcome of the case. *Booz*, 734 F.2d at 1380-81. The evidence must also be probative of the claimant's condition as it existed at the relevant time. *Sanchez v. Sec'y*, 812 F.2d 509, 511 (9th Cir. 1987).

Dr. Berg examined plaintiff on June 16, 2016 and completed a psychologial assessment and mental impairment questionnaire. AR at 701-10. Dr. Berg administered a psychological history questionnaire, a mental status examination, and several psychological tests. *See id*. at 701. Dr. Berg also reviewed plaintiff's treatment records. *See id*. at 702. During the mental status examination, Dr. Berg observed plaintiff: had a sad, depressed, and anxious mood and affect; had linear thinking; denied auditory and visual hallucinations; indicated she felt paranoia and distrust; and had difficulties with her serial threes and sevens. *See id*. Plaintiff was unable to complete one of the psychological tests. *See id*. at 701. Based on the examination, tests, and review of plaintiff's medical history, Dr. Berg diagnosed

plaintiff with major depressive disorder and opined plaintiff would have moderate to marked limitations in almost all areas. *See id*. at 706-09. Dr. Berg opined that plaintiff's symptoms and limitations applied as far back as June 11, 2011. *Id*. at 710.

The Appeals Council considered Dr. Berg's opinion and found that plaintiff's arguments for remand and the opinion did not provide a basis for remand. *See id*. at 6. Plaintiff contends the fact that the Appeals Council reviewed Dr. Berg's opinion means it constitutes new and material evidence requiring remand. JS at 31. This argument is unpersuasive. It cannot be the case that the mere act of reviewing new evidence makes it material and requires remand. Otherwise, anytime the Appeals Council reviews new evidence, it would have to remand the case. Instead, when the Appeals Council reviews new evidence, it must make a determination whether that evidence is material. Here, the Appeals Council determined it would not have changed the outcome and therefore was not material. *See Mayes*, 276 F.3d at 462 (district court properly denied remand because the new evidence was not material).

Plaintiff fails to demonstrate that Dr. Berg's opinion was material. Plaintiff correctly notes that the opinion concerns his mental impairments and Dr. Berg opined such limitations began on June 11, 2011, the alleged onset of disability date. But if Dr. Berg relied on his examination alone, he could only offer an opinion as to plaintiff's limitations on that date, June 16, 2016, which was almost a year after the ALJ rendered his decision. Dr. Berg's opinion that plaintiff had marked limitations since June 11, 2011, the alleged onset date, must have been based on Dr. Eklund's treatment notes and opinion, as well as plaintiff's subjective complaints. As discussed above, the ALJ properly discounted both Dr. Eklund's opinion and plaintiff's testimony. Accordingly, substantial evidence did not support Dr. Berg's opined disability onset date or his opinion as to plaintiff's

limitations during the relevant period. At most, Dr. Berg's opinion is material to the time period after the ALJ's denial, which is not at issue here.

The ALJ properly determined that Dr. Berg's opinion did not provide a basis for changing the outcome and therefore was not material.

**F.    Plaintiff Forfeited Her Appointments Clause Challenge**

On November 13, 2018, after the issues in this case were fully briefed, plaintiff's counsel filed a letter with the court raising a new objection, namely, that the ALJ was not constitutionally appointed at the time he found plaintiff not disabled. Putting aside the impropriety of plaintiff raising her objection in this fashion, it does not merit relief in any event because plaintiff forfeited this argument when she failed to raise it during her administrative proceedings.

Plaintiff relies on *Lucia v. Securities and Exchange Commission*, __ U.S. __, 138 S. Ct. 2044, 201 L. Ed. 2d 464 (2018), which holds that ALJs of the Securities and Exchange Commission are "Officers of the United States" subject to the Appointments Clause in Article II of the United States Constitution. *Id.* at 2055. But in *Lucia*, the Supreme Court also recognized that to obtain relief based on a challenge to the validity of an ALJ's appointment, the challenge must be timely made. *Id.* ("'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief") (citation omitted). In *Lucia*, the petitioner's challenge was timely because he "contested the validity of [the ALJ's] appointment before the Commission." *Id.*

Plaintiff here did not raise the validity of the ALJ's appointment at the administrative level, or at any time before the November 13, 2018 letter. She acknowledges this, but argues she may raise the challenge for the first time in this court, citing *Sims v. Apfel*, 530 U.S. 103, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). *Sims* made clear, however, that it was not deciding whether a Social Security claimant must exhaust issues before the ALJ to obtain judicial review, and instead

merely held that exhaustion of issues before the Appeals Council is not required for judicial review. *Id.* at 107, 112. That does not help plaintiff here. Indeed, since *Lucia* courts have continued to reject as untimely Appointments Clause challenges where the challenge was not first made at the administrative level. *See, e.g., Kabani & Co. v. SEC*, 733 Fed. Appx. 918, 919 (9th Cir. 2018) ("petitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency"), *petition for cert. docketed*, No. 18-1117 (U.S. Feb. 26, 2019); *Hughes v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").

The court does not now decide whether *Lucia* applies to Social Security Administration ALJs. Because plaintiff forfeited her challenge to the validity of the ALJ's appointment here when she did not raise her challenge at the administrative level, she is not entitled to relief on her Appointments Clause challenge in any event.

## VI.

## RECOMMENDATION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 25, 2019

_____
SHERI PYM
United States Magistrate Judge

22